UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THERESA WIGLEY,

    Plaintiff,                                 CASE NO.:   8:04-CV-1524-T-27TGW

v.

WESTERN FLORIDA LIGHTING, INC.,
and FLORIDA CUSTOM ENGRAVERS, INC.,

    Defendant.
_____/

### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
### AND INCORPORATED MEMORANDUM OF LAW

Defendants WESTERN FLORIDA LIGHTING, INC. (hereinafter "Florida Lighting"), and FLORIDA CUSTOM ENGRAVERS, INC. (hereinafter "Florida Engravers"), by and through their undersigned counsel, and pursuant to Rule 56, Federal Rules of Civil Procedure hereby file this Motion for Partial Summary Judgment. Summary Judgment should be granted in favor of Florida Lighting and Florida Engravers on Counts I (FLSA Retaliation) and II (Florida's Private Whistleblower's Act) of Plaintiff's Amended Complaint. Plaintiff cannot state a prima facie case against Florida Lighting or Florida Engravers for Fair Labor Standards Act ("FLSA") Retaliation because the record does not show any causal connection between any protected conduct by Plaintiff and any adverse employment action. Moreover, because as a matter of law Plaintiff cannot sustain her claim based on the Florida Whistle-Blower Act, summary judgment is appropriate as to Count II.

**I.     INTRODUCTION**

Plaintiff filed suit against Florida Lighting and Florida Engraving on June 2, 2004 in the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County, Florida. After service of

the Complaint, Defendants removed this case to the Middle District of Florida. (Docket No. 1) On July 29, 2004, Plaintiff filed her Amended Complaint with this Court. (Docket No. 7). This is the operative Complaint at issue.

Plaintiff's Complaint alleges that she was retaliated against by Florida Lighting and Florida Engraving for her reporting of violations of the Fair Labor Standards Act (Count I). Specifically, Plaintiff alleges that she was terminated from her employment as an engraver with Florida Engraving and constructively discharged from her employment with Florida Lighting because of her reporting of the alleged FLSA violations. *See Amended Complaint* at ¶¶ 15 and 16. Count II of Plaintiff's Complaint alleges a state cause of action pursuant to § 448.102, Florida Statutes, for Plaintiff's reporting of alleged FLSA violations. Counts III alleges a state court action for unpaid wages pursuant to Florida Statute Chapter 448 and Count IV alleges that Defendants failed to pay Plaintiff required overtime in violations of 29 U.S.C. § 201 *et seq.*

Florida Lighting and Florida Engraving are businesses owned and operated by Mr. Bill Donati. *See Affidavit of William C. Donati* at ¶1 (attached hereto and incorporated herein as "Exhibit A."); Depo., William Donati at p. 8-13. Florida Lighting is in the business of selling light fixtures to electrical distributors in the area. Depo., William Donati at pp. 14 & 23. Florida Engraving is in the business of engraving plastics for the electrical industry. Depo., William Donati at pp.22-24. Florida Engraving sells the engraved plastics to electrical contractors. Depo., William Donati at pp.22-24. Both Florida Lighting and Florida Engraving are located at the same location in Pinellas County, Florida. Depo., William Donati at pp.8-12.

Plaintiff was an employee of Defendants from May of 2001 until November 18, 2002. Depo., William Donati, p.17. Plaintiff was hired by Florida Lighting in May of 2001 as a corporate administrator. Depo., William Donati at p.17; Depo., Wigley at 21-22. Plaintiff's

responsibilities included preparing invoices for the Donati related companies, managing accounts payable and receivable, posting payments to the company's financial software, ensuring deposits were properly deposited and credited, and calculating commissions. Depo., Wigley at p.22; Depo William Donati at p.15-18. Plaintiff performed these financial functions for several of Mr. Danoati's related companies. Depo., William Donati at pp.16-18. Soon after she was hired, Ms. Wigley took on additional human relations functions with Florida Lighting. Depo., Wigley at pp.24-27.

Plaintiff was hired by Mr. Donati. *Affidavit of William C. Donati* at ¶ 4; Depo., Wigley at p.24. Mr. Donati alone supervised Plaintiff. *Id.,* at ¶ 5; Depo., Wigley at p.24. In fact, Mr. Donati was the only individual of Florida Lighting and Florida Engraving who had the authority to hire and fire Plaintiff. *Id.,* at ¶¶ 6-8.

During the first year of Plaintiff's employment, Plaintiff rarely engaged in any engraving work. During this period, Plaintiff performed engraving work only when Mr. Donati was out of the office or unavailable. Depo., Wigley at p.39. In June of 2002, after Plaintiff requested a raise, Mr. Donati offered Plaintiff a second job with Florida Engraving. Depo., Wigley at p.39; Depo., William Donati at p.30. It was Plaintiff's belief that Mr. Donati did not want to do the engraving work anymore. Depo., Wigley at p.39. Mr. Donati intended to offer Plaintiff this second job as a way to increase the amount of money she made by offering her an additional job to be completed before or after work. Depo., William Donati at p.70-71.

As part of Plaintiff's accounting responsibilities with Florida Lighting, on a monthly basis Plaintiff would prepare a spreadsheet of the commissions she was due from the engraving work and provide the document to Mr. Donati's wife. Depo., Wigley at p.38-40; Depo., William Donati at p.52. Mrs. Donati would then cut Plaintiff a commission check from Florida

Engraving based on the information Plaintiff provided her. Depo., Wigley at p.38-40; Depo., William Dontai at p.52; Depo., Emilie Donati at p. 14-15.

During Plaintiff's second year of employment, Plaintiff again asked Mr. Donati for a raise. Depo., Wigley at pp.32-33 & 43. At this time, Mr. Donati agreed to increase Plaintiff's commission on Florida Engraving work from 5% to 10%. Depo., Wigley at p.44. Unbeknownst to Mr. Donati and without his authorization, at some point Plaintiff increased her commission further to 15% of sales. Depo., William Donati at pp.43, & 62-64; Depo., Emilie Donati at 21-23. Only after Plaintiff's employment did Mr. Donati become fully aware of Plaintiff's unauthorized increase in commission. Depo., Emilie Donati at p.21-23.

In mid-August of 2003, Plaintiff began having issues with Mr. Donati that she "was not comfortable with." Depo., Wigley at p.45. Plaintiff testified that Mr. Donati made comments during a lunch meeting that Plaintiff did not think were appropriate. Depo., Wigley at p.45. Plaintiff left work that day after lunch and submitted to Mr. Donati a letter of resignation. Depo., Wigley at 45-46; *Affidavit of William C. Donati* at ¶ 10. Mr. Donati would not accept Plaintiff's resignation and called Plaintiff on the telephone and asked her to come talk about what problems existed. Depo., Wigley at p.49. After Plaintiff missed a day and a half of work, Plaintiff and Mr. Donati spoke and worked through Plaintiff's issues and Mr. Donati convinced Plaintiff to stay on as an employee. Depo., Wigley at p.49; *Affidavit of William C. Donati* at ¶ 10. Additionally, Plaintiff submitted to Mr. Donati a list of things she believed needed to be resolved along with proposed resolutions. Depo., Wigley at p.46 & Exhibit 2.

When Plaintiff was told that she would not be paid for the day and a half she missed work because of her attempted-resignation, Plaintiff telephoned the United States Department of Labor to report alleged labor violations. Depo., Wigley at p.49-53; Amended Complaint at ¶ 8. The

Department of Labor subsequently conducted an investigation of Defendants. During this investigation, Plaintiff also sent a letter to the Department of Labor further describing her alleged complaints. Depo., Wigley at p.57. At this time, Plaintiff did not tell anyone that she was in contact with the Department of Labor. Depo., Wigley at p.59. Only later did Plaintiff tell other several co-employees that she had contacted the Department of Labor. Depo., Wigley at pp.59-60

During the Department of Labor's investigation, investigator Sharon Knighton conducted interviews at Defendants' place of business over a two day period. Depo., Wigley p.67-69. A subject of this investigation was the work that Plaintiff was performing for Florida Engraving and whether Plaintiff should have been paid overtime for this work. After it became known that part of the investigation was the work performed for Florida Engraving, Mr. Donati told Plaintff that she was to do no further work for Florida Engraving until further notice. Depo., Wigley p.70; Depo., William Donati at p.44. Plaintiff immediately telephoned Ms. Knighton to inform her of Mr. Donati limiting her Florida Engraving work. Depo., Wigley at p.72. Mr. Donati then told Plaintiff that she could continue to perform the engraving work temporarily. Depo., Donati at p.44.

Thereafter, Ms. Knighton informed Mr. Donati that the work performed for Florida Engraving was not considered work for a separate company and he needed to ensure that his employees did not work overtime or he would need to pay overtime wages. Depo., Donati at p.43, 46 & 47. Ms. Knighton told Mr. Donati that if he could not ensure his employees did not work overtime, he could terminate their employment. Depo., Donati at p.43, 46 & 47; *Affidavit of William C. Donati* at ¶11. During the mid-morning hours of November 18, 2003, Mr. Donati asked Plaintiff to come into his office. Depo., Wigley at p.79. Plaintiff complied and met with

Mr. Donati and Ms. Knighton. During this conversation, Mr. Donati asked Plaintiff if she worked during her lunch hour. Depo., Wigley at pp.79-80; Depo., William Donati at pp.42-43. Plaintiff confirmed that she did work during her lunch hour. Depo., Wigley at pp.79-80; Depo., William Donati pp.42-43. Based on Mr. Donati's previous discussions with Ms. Knighton, Mr. Donati informed Plaintiff that she was not to perform any more engraving work. Depo., William Donati at pp.42-46; Depo., Wigley at pp.79-80. Mr. Donati terminated Plaintiff from Florida Engraving. Depo., William Donati at pp.42-46. Plaintiff continued working that day until noon when she clocked out and never returned. Depo., Wigley at pp.81-82. The record is clear that when Plaintiff was terminated from Florida Engraving, she voluntarily chose to leave her position with Florida Lighting. Depo., Wigley at pp.48-49. Mr. Donati fully intended that Plaintiff stay on as an employee of Florida Lighting. *Affidavit of William C. Donati* at ¶12.

## II. THE APPRORIATE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(e). Rule 56(c) mandates the entry of summary judgment against the plaintiff if she fails to make a showing sufficient to establish the existence of every essential element to her case, and on which she will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). Where, as here, full discovery has been conducted "there is no use for trial unless there is sufficient evidence favoring the [plaintiff] for a jury to return a verdict for that party. If the evidence is *merely colorable, or is not significantly probative*, summary judgment may be granted." *Earley*, 907 F.2d at 1080-81 (internal citations omitted).

This Court "must consider all the evidence in the light most favorable to the non-moving party," *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987), and "resolve all reasonable doubts in favor of the non-moving party." *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987). However, a trial court is not required to resolve *all* doubts in favor of the non-moving party. *See id.*

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Earley*, 907 F.2d at 1080 (quoting *Celotex*, 447 U.S. at 327). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The plaintiff bears the burden of coming forward with sufficient evidence on *each element* that must be proved. *Rollins*, 833 F.2d at 1528. "The trial court must bear in mind the actual quantum and quality of proof necessary to support liability in a given case. *Earley*, 907 F.2d at 1080 (*internal quotation marks omitted*).

Entry of summary judgment for defendants is common in employment discrimination cases. *See Earley*, 907 F.2d 1080.

### III. SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT I BECAUSE PLAINTIFF CANNOT SUSTAIN A PRIMA FACIE CASE OF FLSA RETALIATION.

A. <u>The FLSA Retaliation Framework.</u>

Section 215 of the FLSA protects persons against retaliation for asserting their rights under the statute by prohibiting any employer from discharging or discriminating against any employee because that employee has filed any complaint under the FLSA. *See* 29 U.S.C. §

215(a)(3). Retaliation claims under the FLSA are analyzed using the familiar *McDonnell Douglas* framework applied to retaliation claims under Title VII, the ADEA and the ADA. *See Wolfe v. Coca-Cola Co.*, 200 F.3d 1338, 1342-43 (11th Cir. 2000); *Debrecht v. Osceola County*, 243 F.Supp.2d 1364, 1373 (M.D.Fla. 2003); *Burnette v. Northside Hos.*, 342 F.Supp.2d 1128, 1133 (N.D.Ga. 2004). To establish a prima facie case of retaliation under the FLSA, Plaintiff must show:

> (1) that she engaged in activity protected under the act; (2) that she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.

*See Wolfe*, 200 F.3d at 1342-43; *Debrecht*, 243 F.Supp.2d at 1373; *Burnette*, 342 F.Supp.2d at 1133. Plaintiff must prove that Defendants would not have taken the adverse action "but for" Plaintiff's assertion of her FLSA rights. *Reich v. Davis*, 50 F.3d 962, 956-66 (11th Cir. 1995).

In order to establish the requisite causal connection between the protected conduct and the adverse employment action – the third prong of the FLSA Retaliation framework – Plaintiff must show that the protected activity and the adverse action were not wholly unrelated. *Clover v. Total Systems Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999). "In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. Bellsouth Telecom., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). In cases involving a corporate defendant, the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression. *See Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997). This requirement is grounded in "common sense." *See Brungart*, 231 F.3d at 799. "A decision maker cannot have been motivated to retaliate by something unknown to him." *Id.*

> B.   Summary Judgment is appropriate because Mr. Donati – the decision-maker – was unaware that Plaintiff had complained to the Department of Labor.[1]

Plaintiff's retaliation claim rests on the allegation that she was terminated from her position with Florida Engraving and constructively terminated from her position with Florida Lighting because she reported to the Department of Labor alleged violations of the FLSA. However, the record does not substantiate Plaintiff's claims.

Mr. Donati was the one and only decision-maker regarding Plaintiff's employment with Defendants. *See Affidavit of William C. Donati* at 4-8. Mr. Donati hired Plaintiff and was the sole decision-maker regarding her termination from Florida Engraving. *See id.* at 4 & 11. On this one issue the parties agree: Mr. Donati was unaware that Plaintiff had made a complaint with the Department of Labor. Plaintiff herself admitted in deposition numerous times that she never told Mr. Donati about any complaints to the Department of Labor and never told Mr. Donati that she was the one who initially contacted the federal department.[2] Moreover, Mr. Donati had no

---

[1]   For purposes of this Motion, Defendants submit that Plaintiff may be able to create genuine issues of material fact on the first two prongs of the FLSA Retaliation framework: that she engaged in protected activity under the act and that she potentially suffered adverse action by the employer. Defendants do not herein waive any argument that Plaintiff will be unable to establish the first two prongs of the framework should a trial on the merits be necessary.

[2]
Q:   Did you inform Mr. Donati that you didn't believe that you were an exempt employee before you made [the call to the Department of Labor]?
A:   I never had to do that because Bill Donati has expressed to me that all of his employees minus the receptionist are exempt.
Q:   But you didn't believe you were exempt?
A:   No.
Q:   Okay. Did you inform him of that fact?
A:   I didn't have to –
Q:   That's not my question. My question is, did you inform him of that fact?
A:   I don't recall specifically informing him of that.
Depo., Wigley at p.55-56.

Q:   Did you have any specific conversations with Bill Donati regarding your conversations with the Department of Labor prior to this launching of the investigation?
A:   No.
Depo., Wigley at p.63

9

idea that Plaintiff had made any complaints to the Department of Labor until after Plaintiff had voluntarily left her position with Florida Lighting.[3]

Accordingly, Plaintiff cannot possibly make out a prima facie claim for FLSA Retaliation. The record evidence does not support, and cannot possibly demonstrate a causal connection between Plaintiff's alleged protected activity and Plaintiff's termination from Florida Engraving or Plaintiff's voluntary resignation from Florida Lighting. Because Mr. Donati – the decision maker – could not possibly have been motivated to retaliate by something unknown to him, *see Brungart*, 231 F.3d at 799, Plaintiff's claim of FLSA retaliation must fail and summary judgment should be granted in favor of Defendants.

---

Q: Had you told [Mr. Donati] that you had talked to the Department of Labor with a claim of some sort prior to that meeting?
A: No.
Depo., Wigley at p.85

Q: You say in Paragraph 12 [of the Amended Complaint] that your termination was in retaliation for your report and testimony to the Department of Labor investigator and resulted in your constructive discharge from your employment with Defendant, Western Florida Lighting. Is there any time that you told Bill Donati of your report to the Department of Labor prior to your being fired in November of 2003?
A: No.
Depo., Wigley at 98

[3]  Q: Who called the Department of Labor?
A: I don't know. I have a suspicion, but I do not know. They will not tell me.
Depo., Donati at p.37

Q: Let me finish my question, please. You suspect that Theresa Wigley called the Departmnt of Labor, correct?
A: I did not suspect it at the time. The Department of Labor met with my managing partner and made a statement that we will not and cannot divulge. This could have been done by an industry, a random, a competitor, an employee.
Only after Theresa Wigley did not work for me, and this is on the record with the Department of Labor, that two days later she sent an email. And in that email she indicated that she was the person who caused it. She did, not me. I knew nothing about it at that point. I only suspected her after I saw that email.
Depo., Donati at p.38

### III. SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT II BECAUSE PLAINTIFF CANNOT SUSTAIN A CLAIM PURSUANT TO FLORIDA'S WHISTLE-BLOWER ACT.

#### A. Florida's Whistle-Blower Act.

Sections 448.101-448.105 of the Florida Statutes are remedial statutes "designed to protect private employees who report or refuse to assist employers who violate laws enacted to protect the public." *See Golf Channel v. Jenkins*, 752 So.2d 561, 562 (Fla. 2000); *Arrow Air, Inc. v. Walsh*, 645 So.2d 442, 424 (Fla. 1994). Section 448.102 prohibits employers from taking three types of retaliatory personnel action. Section 448.102 provides in full:

> An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.
>
> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.
>
> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

*See* Fla. Stat. § 448.102.

Retaliation claims brought pursuant to this Florida Statute are also analyzed under the *McDonnell Douglas* framework. *See White v. Purdue Pharma, Inc.* 369 F.Supp.2d 1335, 1336 (M.D.Fla. 2005); *see also Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir.

11

2000); *Rice-Labar v. City of Ft. Lauderdale*, 853 So.2d 1125, 1132 (Fla. 4th DCA 2003)(applying Title VII analysis to claim brough under Florida's public Whistle-Blower Act). Accordingly, in order to establish a prima facie case of retaliation under the Florida Statute, Plaintiff must prove that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse employment action was causally linked to the statutorily protected activity. *White*, 369 F.Supp.2d at 1336.

> B. <u>Summary Judgment is appropriate because Mr. Donati – the decision-maker – was unaware that Plaintiff had complained to the Department of Labor.</u>

For the very same reason that the record does not support any effort by Plaintiff to make out a prima facie case of FLSA Retaliation, Plaintiff's claim of retaliation pursuant to the Florida statute must fail. Because Mr. Donati – the decision maker – could not possibly have been motivated to retaliate by something unknown to him, the record evidence does not support, and cannot possibly demonstrate a causal connection between Plaintiff's alleged protected activity and Plaintiff's termination from Florida Engraving or Plaintiff's voluntary resignation from Florida Lighting.

> C. <u>Summary Judgment is also appropriate because Plaintiff failed to bring the issue of any alleged FLSA violations to the attention of Defendants in writing and Plaintiff failed to afford Defendants a reasonably opportunity to correct the alleged violations of law.</u>

Plaintiff's Complaint alleges that she was terminated from Florida Lighting, subjected to a hostile work environment, and constructively discharged from Florida Lighting because of her reporting and opposition to violations of the FLSA. Just like her FLSA Retaliation claim, Plaintiff's state law claims are premised on the theory that she was terminated because she complained to the Department of Labor of alleged violations of the FLSA. Accordingly, Plaintiff's claims are based on § 448.102(1), Florida Statutes.

Florida law is clear, before bringing a claim for Retaliation pursuant to § 448.102(1), Plaintiff must first provide written notice of the alleged violations and provide the Defendant with a reasonable opportunity to cure the alleged unlawful activity. *See* Fla. Stat. § 448.102(1); 448.103(1)(c) ("[a]n employee may not recover in any action brought pursuant to this subsection if he or she failed to notify the employer about the illegal activity, policy, or practice as required by § 448.102(1)); *see also Golf Channel v. Jenkins*, 752 So.2d at 566 ("The notice requirement in subsection 448.102(1) is unique in that it requires *both* written notice and a reasonable opportunity to cure the unlawful activity.").

There is absolutely no record evidence that Plaintiff provided Defendants with any written notice that she believed Florida Lighting or Florida Engraving were in violation of any federal or state labor law. Moreover, Mr. Donati has provided sworn testimony that Plaintiff provided no such written notice. *See Affidavit of William C. Donati* at ¶ 15. Accordingly, Summary Judgment should be granted in favor of Defendants as to Count II.

## IV. CONCLUSION

For the foregoing reasons addressed in detail above, Defendants WESTERN FLORIDA LIGHTING, INC. and FLORIDA CUSTOM ENGRAVERS, INC respectfully requests that this Court grant this Defendant's Motion for Partial Summary Judgment.

RESPECTFULLY SUBMITTED this 2nd day of September, 2005.

/s/ Jeffrey W. Gibson, Esq.
JOSHUA MAGIDSON
Florida Bar No. 0301701
JEFFREY W. GIBSON, ESQ.
Florida Bar No.: 0568074
MACFARLANE FERGUSON & McMULLEN
625 Court Street, Suite 200
Post Office Box 1669 (33757)
Clearwater, FL 33756
(727) 441-8966 – Phone
(727) 442-8470 – Fax
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was presented to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notice of electronic filing to **Christopher D. Gray, Esq., Angela E. Outten, Esq., and Wolfgang M. Florin, Esq.,** Counsel for Plaintiff, and that a true and correct copy of the foregoing has been furnished via United States mail to **Christopher D. Gray, Esq., Angela E. Outten, Esq., and Wolfgang M. Florin, Esq.,** 777 Alderman Road, Palm Harbor, FL 34683, this 2nd day of September, 2005.

s/Jeffrey W. Gibson
JEFFREY W. GIBSON, ESQ.

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THERESA WIGLEY,

    Plaintiff,                                  CASE NO.:    8:04-CV-1524-T-27TGW

v.

WESTERN FLORIDA LIGHTING, INC.,
and FLORIDA CUSTOM ENGRAVERS, INC.,

    Defendant.
_____/

## **AFFIDAVIT OF WILLIAM C. DONATI**

STATE OF FLORIDA

COUNTY OF PINELLAS

    BEFORE ME, the undersigned authority, personally appeared William C. Donati, who after first being duly sworn, deposes and says:

    1.    My name is William C. Donati and I am over 18 years of age and competent to make the statements set forth below.

    2.    The statements set forth below are based upon my own personal, first hand knowledge.

    3.    I am the President of Western Florida Lighting, Inc. and Florida Custom Engravers, Inc. and operate both companies.

    4.    I alone made the decision to hire Theresa Wigley.

    5.    I alone supervised Theresa Wigley.

    6.    I alone was authorized to make decisions regarding Ms. Wigley's employment.

7. I alone was authorized to make decisions regarding Ms. Wigley's salary.

8. I alone was authorized to terminate Ms. Wigley's employment with Western Florida Lighting, Inc. and Florida Custom Engravers, Inc.

9. I alone decided to allow Ms. Wigley the opportunity to earn commission by performing engraving functions for Florida Custom Engravers, Inc.

10. In August of 2003, Theresa Wigley provided me with the letter of resignation which is attached to this Affidavit. After speaking with Ms. Wigley I convinced her to stay on as employee.

11. After consulting with Sharon Knighton, the Department of Labor Investigator, and after Ms. Wigley confirmed that she worked through her lunch hours, I alone decided to terminate Ms. Wigley's work for Florida Custom Engravers, Inc. instead of having to pay Ms. Wigley overtime.

12. After informing Ms. Wigley that she was not to perform any further engraving functions on November 18, 2003, I intended for Ms. Wigley to continue in her position with Western Florida Lighting, Inc.

13. I did not terminate Ms. Wigley from Western Florida Lighting, Inc.

14. Ms. Wigley voluntarily left work on November 18, 2003 and never returned.

15. Theresa Wigley never provided me with any written document complaining that Western Florida Lighting, Inc., and/or Florida Custom Engravers, Inc. was in violation of any state of federal law regarding any compensation provided to her.

FURTHER AFFIANT SAYETH NAUGHT.

*William C. Donati*
William C. Donati

SWORN TO and SUBSCRIBED before me this 2nd day of September, 2005, by WILLIAM C. DONATI, who is (personally known to me) or has produced _____ as identification.

*Linda L. Stranger*
Signature of Notary Public

LINDA L. STRANGER

Linda L. Stranger
My Commission DD354435
Expires October 17 2008

August 13, 2003

(G1)

Mr. Bill Donati, President
Western Florida Lighting, Inc.
Plastic Sales of Florida, Inc.
Florida Custom Engravers, Inc.

RE:   Letter of Resignation

Dear Bill,

I am sorry to say that I feel I have no choice but to tender my letter of resignation, effective immediately, as corporate administrator for Western Florida Lighting, Inc. and its subsidiaries.

In the over two-years time that I have been employed, I think you will agree that I have always looked out for both yours and the company's best interests and have treated you with nothing but respect. I want you to know that I love my job – what the job entails and the current employee base of Western Florida Lighting. I believe I am an excellent employee and contributed to the success of the company during my tenure here.

Your current method of running the company is simply not conducive to the principles for which I can operate on a daily basis. It should always be the goals of an HR employee to make sure the company is operating within the law and to circumvent any problems by informing the management team about such possibilities. I simply do not feel that you have enough trust in my work to follow through on many of those issues as is evidenced by your actions. As we have openly discussed in the past, your volatile personality creates a very tense environment in the office, and although you have stated most recently that you are trying to change that character trait, I do not believe that is truly something that is going to happen.

Because I do care about this company and its employees, I want to be honest with you in hopes that it will prevent you from losing any further great employees. People need to be treated with the same respect that you expect to be treated with. When they are not, it creates resentments and poor attitudes which invariably lead to resignations which again are evidenced by the recent unacceptable and high employee turn-over. This should be unacceptable to any company and great measures should be taken to determine the cause of it and make the appropriate changes.

I do now and always will have a great deal of respect for your ability to "make the deal" and keep the company financially strong during economic hard times and your ability to

put a good business deal in place for our customers; however most often that is not enough from the head of a company.

You have referred to your desire to "treat everyone the same" since my start here. However, I have found that this concept is not working. I believe the company is currently run using an un-equal and unfair compensation plan whereby employees in management or high positions are being compensated less than those in an equal or lower position. On the same note, those employees who are high producers or exceed expectations, are often not recognized for this in your effort to equally treat everyone. Position, title and responsibility and accountability are not recognized or compensated appropriately. You often speak of the fact that you get upset because the employees are ungrateful for what you do for them. Gratitude has to go both ways. When a company goes out of its way to show an employee that it is grateful for him or her, you will probably find that the employee is grateful for being there.

Bill, all of these issues are ones we have spoken about repeatedly in the past and are not new ones to consider. Perhaps you will give them more weight for the company's future.

Respectfully,

Theresa B. Wigley