UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THERESA WIGLEY,

    Plaintiff,

vs.                                              Case No. 8:04-CV-1524-T-27TGW

WESTERN FLORIDA LIGHTING, INC. and
FLORIDA CUSTOM ENGRAVERS, INC.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Defendants' Motion for Partial Summary Judgment (Dkt. 20) and Plaintiff's Opposition (Dkt. 24). Upon consideration, Defendants' Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART.

### Introduction

Plaintiff, Theresa Wigley, filed this action against Defendants, Western Florida Lighting, Inc. ("Florida Lighting") and Florida Custom Engravers, Inc. ("Florida Engravers"), her former employers, alleging retaliation in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 215 (Count I), and the Florida's Private Whistleblower's Act ("Whistleblower's Act"), FLA. STAT. § 448.102 (Count II).[1] (Dkt. 7, Am. Compl.). Specifically, Plaintiff alleges that she was terminated from her employment with Florida Engravers and constructively discharged from her employment with Florida Lighting as a result of her reporting FLSA violations by her employers to the United States Department of Labor. (Dkt. 7, ¶¶ 11-12).

---

[1] Plaintiff also asserts claims for recovery of unpaid wages (Count III) and overtime compensation (Count IV). (Dkt. 7).

1

## **Factual Background**[2]

Florida Lighting and Florida Engravers are businesses owned and operated by William Donati.[3] (Dkt. 7, ¶ 5; Dkt. 20, Ex. A, Affidavit of William Donati, ¶ 3). Plaintiff was hired by Donati as a corporate administrator for Florida Lighting in May, 2001. (Dkt. 23, Deposition of Theresa Wigley (hereinafter "Plaintiff's Depo.") at 21-22; Dkt. 22, Deposition of William Donati (hereinafter "Donati's Depo.") at 17). Plaintiff performed administrative, personnel and accounting clerk functions for Florida Lighting and other related companies owned by Donati. (Plaintiff's Depo. at 18, 21-22, 25; Donati's Depo. at 16-18, 25). In June, 2002, Plaintiff began performing engraving work for Florida Engravers in addition to her other duties.[4] (Plaintiff's Depo. at 36-37; Donati's Depo. at 25, 28-29). Donati was Plaintiff's only supervisor and was the only person who had authority to hire or fire her. (Dkt. 20, Ex. A, ¶¶ 4-8; Plaintiff's Depo. at 24).

In August, 2003, Plaintiff submitted a letter of resignation to Donati and left work after lunch. (Plaintiff's Depo. at 45-46; Dkt. 20, Ex. A, ¶ 10). Donati refused to accept the resignation and called Plaintiff at home to discuss the matter with her. (Plaintiff's Depo. at 49; Dkt. 20, Ex. A, ¶ 10). After missing one and a half days of work, Plaintiff decided to return to her job. (Plaintiff's Depo. at 49).

---

[2] On summary judgment, the evidence is considered in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997).

[3] Both companies are located at the same address in Pinellas County, Florida.

[4] Plaintiff alleges that because Donati did not want to do engraving work himself anymore, he offered her 5% commission if she would do the engraving. (Plaintiff's Depo. at 37). Donati alleges that he offered Plaintiff the opportunity to do the engraving work as a way for her to make more money because she had asked for a raise. (Donati's Depo. at 70-71). Donati considered the engraving work to be a part-time second job to be completed before 8:00am, during lunch, and after 5:00pm. (Donati's Depo. at 70-71).

The parties dispute the amount of commissions Plaintiff was entitled to for her engraving work. This dispute is not relevant or material to this motion.

2

Upon her return, Plaintiff learned that she would not be paid for the day and a half of work she missed. (Plaintiff's Depo. at 49). On September 18, 2003, Plaintiff complained in an email to Donati's wife, Emilie Donati, who did the payroll, that: "Since I am an exempt employee, legally I am to be paid a full day for any day that I am at work."[5] (Dkt. 24, Ex. 3; Plaintiff's Depo. at 50). Thereafter, Plaintiff called the United States Department of Labor to report alleged FLSA violations, including specifically Defendants' failure to pay her for partial days she worked. (Plaintiff's Depo. at 53-54). Plaintiff also sent a letter to the Department of Labor describing her complaints. (Plaintiff's Depo. at 57-58).

The Department of Labor initiated an investigation of Defendants in October, 2003. (Plaintiff's Depo. at 62). During the investigation, the investigator conducted interviews at Defendants' office. (Plaintiff's Depo. at 63). It was only "just before" the interviews that Plaintiff informed two of Defendants' employees that she had made a complaint to the Department of Labor. (Plaintiff's Depo. at 59-63). Plaintiff did not tell anyone at work that she had been in contact with the Department of Labor prior to this time. (Plaintiff's Depo. at 59).

Part of the Department of Labor's investigation included the work Plaintiff was doing for Florida Engravers and whether Plaintiff should have been receiving overtime compensation. (Plaintiff's Depo. at 69-70; Donati's Depo. at 42-44). After Donati found out that the Department of Labor was investigating Plaintiff's engraving work, he told Plaintiff that she was not to perform any more engraving "until further notice." (Plaintiff's Depo. at 69-70; Donati's Depo. at 42-44). In response, Plaintiff called the investigator to inform her that Donati had told her she had to stop

---

[5] Plaintiff also alleges that she had previously complained to Donati about Defendants' failure to pay staff for mandatory monthly meetings that were held after hours. (Plaintiff's Depo. at 52).

3

doing the engraving work.[6] (Plaintiff's Depo. at 72; Donati's Depo. at 44). The same day, Donati told Plaintiff she could continue performing engraving work on a temporary basis. (Plaintiff's Depo. at 72; Donati's Depo. at 44). Donati admits that he was aware that Plaintiff had called the Department of Labor on this date.[7] (Donati's Depo. at 44).

On November 18, 2003, Donati learned from the investigator that Plaintiff had reported that she had worked through her lunches and was, therefore, entitled to back wages.[8] (Donati's Depo. at 42). The investigator also told Donati that he needed to pay Plaintiff overtime wages or stop her from working overtime hours. (Plaintiff's Depo. at 79-80; Donati's Depo. at 45-48). The same day, Donati called Plaintiff to his office to meet with him and the investigator. (Plaintiff's Depo. at 79;

---

[6] Plaintiff testified:

> I went home for my lunch, and I called Sharon Knighton [the investigator] from the Department of Labor to explain the situation. She said that she thought that Bill [Donati] was confused and she would call him on my behalf. That it wasn't that I couldn't continue -- that he couldn't pay me commissions earned on work already done or that I couldn't continue to do the engraving. But that if I did engraving after regular hours or during lunch or what have you, I would have to be paid overtime. That it didn't mean that I couldn't do the engraving. And, evidently she called him because he came in and said, Okay, you can do the engraving.

(Plaintiff's Depo. at 72).

[7] Donati testified: "[S]he was told you're not to do anymore engraving. She went home, she cried. She called back. She called the Department of Labor. And I said, okay, you can engrave temporarily." (Donati's Depo. at 44).

[8] Donati testified:

> Q. On November 18th of 2003, you learned from the Department of Labor investigator that my client [Plaintiff] had alleged that she worked through her lunches, correct?
> A. That is correct.
> Q. And because of that statement she was entitled to some back wages, correct?
> A. That is correct.
> Q. And at that time, after learning that information, you terminated my client from her engraving duties, correct?
> A. Her and two employees prior to her, yes.

(Donati's Depo. at 42).

4

Donati's Depo. at 54). Donati asked Plaintiff whether she had been working through her lunch or taking work home, and Plaintiff confirmed that she had.[9] (Donati's Depo. at 54). Donati then informed Plaintiff that she was not to perform any further engraving work and terminated her from Florida Engravers. (Plaintiff's Depo. at 80; Donati's Depo. at 42, 54).

Plaintiff left work at noon that day and did not return to her job at Florida Lighting. (Plaintiff's Depo. at 81-82; Dkt. 20, Ex. A, ¶ 14). Although Donati terminated Plaintiff from her job at Florida Engravers, he intended her to continue working at Florida Lighting. (Dkt. 20, Ex. A, ¶¶ 12-13). Plaintiff alleges she was terminated from Florida Engravers and constructively terminated from Florida Lighting. (Dkt. 7, ¶¶ 11-12; Plaintiff's Depo. at 48).

Donati denies that he was aware of Plaintiff's complaint to the Department of Labor until after he had terminated Plaintiff.[10] (Donati's Depo. at 38). Plaintiff admits that she did not tell

---

[9] Donati testified:

> Q. Let me ask you if this -- if you agree that this occurred on November 18th of 2003. That you called Ms. Wigley into the office to ask her about working through lunches and taking work home, did that occur?
> A. Yes, it did.
> Q. Okay. And, that Ms. Wigley, affirmed that, in fact, that had occurred, she had worked through her lunches and had taken work home, she made that statement in your presence?
> A. Yes.
> Q. And at that point in time you fired her from her work with Custom -- Florida Custom Engravers in front of the investigator, correct?
> A. That's correct.

(Donati's Depo. at 54).

[10] Donati testified:

> Q. Who called the Department of Labor?
> A. I don't know. I have a suspicion, but I do not know.
> ...
> Q. You suspect that Theresa Wigley called the Department of Labor, correct?
> A. I did not suspect it at the time. ... Only after Theresa Wigley did not work for me, and this is on the record with the Department of Labor, that two days later she sent me an

5

Donati about her Department of Labor complaint prior to her termination.[11] (Plaintiff's Depo. at 63, 85, 98).

## Applicable Standards

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) *(internal citations omitted)*. "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

---

    email. And in that email she indicated that she was the person who caused it. She did, not me. I knew nothing about it at that point. I only suspected her after I saw that email.

(Donati's Depo. at 37-38).

[11] Plaintiff testified:

Q. Did you have any specific conversations with Bill Donati regarding your conversations with the Department of Labor prior to this launching of the investigation?
A. No.
...
Q. Had you told him that you had talked to the Department of Labor with a claim of some sort prior to that meeting?
A. No.
...
Q. ... Is there any time that you told Bill Donati of your report to the Department of Labor prior to your being fired in November of 2003?
A. No.

(Plaintiff's Depo. at 63, 85, 98).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

### Discussion

Defendants move for partial summary judgment on Plaintiff's claims of retaliation in violation of the FLSA and the Whistleblower's Act. (Dkt. 20). Defendants argue that Plaintiff cannot state a *prima facie* case for either claim because she cannot establish a causal connection between her protected activity and her termination. (Dkt. 20, p. 1). Defendants contend that a causal connection cannot be proven because Plaintiff cannot show that Donati was aware of her protected activity. (Dkt. 20, p. 9).

In opposition, Plaintiff argues that there are genuine issues of material fact that preclude summary judgment. (Dkt. 24, p. 1). Specifically, Plaintiff argues that the record includes evidence that Donati was aware of Plaintiff's protected activity based on the following facts: 1) she complained to Donati regarding "overtime issues"; 2) Donati "suspected" her of making a complaint to the Department of Labor; 3) Donati knew she called the Department of Labor investigator and complained during the investigation; 4) Donati terminated her during and as a result of her meeting

7

with the investigator; and 5) Donati threatened that he "would get the person who made the complaint."[12] (Dkt. 24, p. 1).

## I.  FLSA Retaliation

The FLSA protects individuals from retaliation for asserting their rights under the statute by making it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding ...." 29 U.S.C. § 215(a)(3); *see also Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342 (11th Cir. 2000). To prove retaliation under the FLSA, a plaintiff must show that: (1) she engaged in activity protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's protected activity and the adverse employment action.[13] *Wolf*, 200 F.3d at 1342-43. For purposes of this motion, Defendants do not dispute that Plaintiff has met the first two elements of her retaliation claim. (Dkt. 20, p. 9).

To satisfy the causation element, a "plaintiff must prove that the adverse action would not have been taken 'but for' the assertion of FLSA rights." *Wolf*, 200 F.3d at 1343 (*citations omitted*). "To establish that causal connection, a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354

---

[12] Plaintiff testified that when Donati learned a complaint had been made to the Department of Labor, he came into her office and said: "when I find out, you know, who did this, they're going to get theirs." (Plaintiff's Depo. at 83). Plaintiff also testified that Donati did not know that she had contacted the Department of Labor at the time he made this statement and that the statement was not a personal threat directed towards her. (Plaintiff's Depo. at 85).

[13] The analysis of FLSA retaliation claims is similar to the analysis of retaliation claims under Title VII, ADA/ADEA, and FMLA. *See e.g., Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791 (11th Cir. 2000) (FMLA retaliation claim); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322 (11th Cir. 1999) (ADA and ADEA retaliation claims); *EEOC v. White and Sons Enters.*, 881 F.2d 1006 (11th Cir. 1989) (FLSA and Title VII retaliation claims).

(11th Cir. 1999) (*citations and internal quotations omitted*). A causal connection is likely to be found where there is a "close temporal proximity" between the time an employer learns about protected activity and the adverse employment action. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998) (adverse employment action "commenced almost immediately" after employer learned of the protected activity).

However, "temporal proximity alone is insufficient to create a genuine issue of material fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000); *see also Clover*, 176 F.3d at 1355-56. A plaintiff must show, at a minimum, that the decision maker was "actually aware" of the protected conduct at the time of the adverse employment action.[14] *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). "[I]n a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression ...." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997); *see also Brungart*, 231 F.3d at 799 ("A decision maker cannot have been motivated to retaliate by something unknown to him.").

A.  **Protected Activity**

In examining the causal connection element of Plaintiff's retaliation claims, the Court must first determine the extent of her protected activity. Protected activity within the meaning of the FLSA includes filing a complaint alleging FLSA violations, instituting a FLSA proceeding, or providing (or about to provide) testimony in a FLSA proceeding. *See* 29 U.S.C. § 215(a)(3).

---

[14] The employer's awareness of the protected activity may be established by circumstantial evidence. *Goldsmith*, 996 F.2d at 1163.

Informal complaints to an employer regarding wage practices or any conduct that implicates the FLSA qualify as protected activity. *EEOC v. White and Sons Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989); *see also Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1133-34 (N.D. Ga. 2004) (protected activity does not require specific reference to the FLSA as long as the activity or complaint concerns an employer's wage or hour practices). Protected activity under the FLSA is narrower than that under Title VII, which prohibits retaliation based on an employee's assistance with or participation in an investigation.[15] *See* 42 U.S.C. § 2000e-3(a); *Pettway v. Am. Cast Iron Pipe Co.*, 411 F.2d 998, 1006 n.18 (5th Cir. 1969), *reh'g denied*, 415 F.2d 1376 (5th Cir. 1969).

In addition to her initial telephone call to the Department of Labor making a complaint of FLSA violations, Plaintiff argues that she engaged in other protected activity for which she was retaliated against. Specifically, Plaintiff alleges that she engaged in the following instances of protected activity: 1) her complaint to Donati regarding "overtime issues"; 2) her complaint to Donati's wife regarding Defendants' failure to pay her for partial days she worked; 3) her telephone call to the Department of Labor investigator during the investigation; and 4) her interview with the Department of Labor investigator.[16] (Dkt. 42, pp. 2-7).

Plaintiff's initial telephone call and complaint to the Department of Labor constitutes protected activity under the FLSA. In addition, Plaintiff's informal complaint to Donati's wife regarding Defendants' failure to pay her for partial days she worked constitutes protected activity

---

[15] 42 U.S.C. § 2000e-3(a) prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

[16] Defendants do not dispute that Plaintiff's complaint to the Department of Labor was protected activity under the FLSA for purposes of this motion. (Dkt. 20, p. 9). Defendants' motion does not address whether Plaintiff's other conduct constitutes protected activity.

10

within the meaning of the FLSA. *See EEOC v. White and Sons Enters.*, 881 F.2d at 1011.

Plaintiff's complaint to Donati regarding "overtime issues" relating to other employees is too vague and remote in time to constitute protected activity for purposes of her retaliation claims. Similarly, Plaintiff's interview with the Department of Labor investigator does not constitute protected activity since she was merely assisting or participating in the investigation.[17] *See Pettway*, 411 F.2d at 1006 n.18. Plaintiff's telephone call to the Department of Labor investigator during the investigation likewise cannot be considered protected activity since the call was not a complaint regarding wage practices or assertion of rights under the FLSA. Plaintiff's telephone call to the investigator was made as a result of Donati's decision that Plaintiff could not do engraving work or work overtime, which cannot reasonably be interpreted as constituting a wage violation. On the present summary judgment record, this telephone call does not constitute protected activity within the meaning of the FLSA.[18]

Accordingly, only Plaintiff's initial complaint to the Department of Labor and her informal complaint to Donati's wife regarding Defendants' failure to pay her for partial days she worked

---

[17] In her opposition, Plaintiff urges the Court to liberally interpret the language of the FLSA retaliation provision. (Dkt. 24, p. 8). Plaintiff cites *EEOC v. White and Sons Enters.*, 881 F.2d 1006 (11th Cir. 1989), for the proposition that the Eleventh Circuit has broadly interpreted § 215 of the FLSA to protect against retaliation for conduct not expressly listed in the statute. In *EEOC v. White and Sons Enters.*, the Eleventh Circuit did, in fact, hold that informal complaints of FLSA violations made to employers could constitute protected activity under the statute. However, the Eleventh Circuit has not so broadly interpreted § 215 of the FLSA to include participation in an investigation as protected activity. Even affording § 215 a broad construction to promote its remedial purpose, this Court will not interpret the statutory language beyond its plain meaning. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).

[18] The motion, opposition, and depositions submitted by the parties do not provide sufficient detail regarding the Plaintiff's telephone call to the investigator for the Court to determine that it included a complaint of wage violations. On this record, Plaintiff's telephone call to the investigator constituted participation in the investigation, which is not protected activity under the FLSA. *See Pettway*, 411 F.2d at 1006 n.18. Further, Plaintiff has not alleged that Donati's decision that she was not to perform engraving work, which was made prior to her termination and rescinded the same day, was made in retaliation for Plaintiff's complaint of FLSA violations.

constitute protected activity under the FLSA.

**B.     Donati's Knowledge of the Protected Activity**

Plaintiff has not shown, either through direct or circumstantial evidence, that Donati was actually aware of her protected activity prior to her termination. To the contrary, Plaintiff admits that she did not have any specific conversations with Donati regarding her complaint filed with the Department of Labor and that she did not tell him about the complaint prior to her termination. (Plaintiff's Depo. at 63, 85, 98).

In arguing that Donati was aware of her Department of Labor complaint, Plaintiff offers that Donati "suspected" that she was the one who filed the complaint. (Dkt. 24, p. 1). Plaintiff has not provided any authority, and this Court is not aware of any, to support the argument that an employer's suspicion is sufficient to establish knowledge of protected activity and sufficient to meet the causal connection element of a retaliation claim. Plaintiff also argues that she told two co-workers, one of whom was Donati's business partner, that she had filed a complaint with the Department of Labor. Although Plaintiff may prove an employer's knowledge of the protected activity by circumstantial evidence, Plaintiff has not provided any evidence, circumstantial or otherwise, to impute those employees' knowledge of her Department of Labor complaint to Donati. *Raney*, 120 F.3d at 1197; *Goldsmith*, 996 F.2d at 1163 (plaintiff must show that the corporate agent who took the adverse action was actually aware of the protected expression).

Similarly, Plaintiff has provided no evidence that her complaint to Donati's wife was shared with Donati or any reason it should be imputed to him. A plaintiff must show "a defendant's awareness with more evidence than mere curious timing coupled with speculative theories." *Raney*, 120 F.3d at 1197. Further, in the face of Donati's unequivocal denial that he was aware of Plaintiff's protected activity, Plaintiff has failed to controvert the denial or offer sufficient circumstantial evidence to the contrary.

12

Plaintiff argues that a genuine issue of material fact exists as to whether Donati was aware of Plaintiff's protected activity because Donati terminated her "during and as a result of her meeting with the DOL investigator." (Dkt. 24, p. 1). Although a causal connection may be found where there is a "close temporal proximity" between the time an employer learns of protected activity and the adverse employment action, the temporal proximity alone is insufficient in the face of unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct. *Brungart*, 231 F.3d at 799; *Farley*, 197 F.3d at 1337; *Clover*, 176 F.3d at 1355-56. The evidence in this record establishes only that Donati knew Plaintiff participated in the Department of Labor investigation when he terminated her.

Lastly, Plaintiff argues that Donati's threat that he "would get the person who made the complaint" supports Plaintiff's retaliation claim. (Dkt. 24, p. 1). The record reveals that Donati told Plaintiff, "when I find out, you know, who did this, they're going to get theirs." (Plaintiff's Depo. at 83). Although this statement establishes circumstantial evidence of Donati's potential retaliatory intent, it does not establish circumstantial evidence that Donati was aware of Plaintiff's protected activity. Plaintiff acknowledges that the statement was not directed towards her and that it was made before Donati knew that she was the person who contacted the Department of Labor.[19] Further, the

---

[19] Plaintiff testified:

Q. ... When were you threatened by Mr. Donati?
A. Before Bill [Donati] knew that I was the person who contacted the Department of Labor or before the meeting with Sharon Knighton when he terminated me, he had come into my office at one point and said 'when I find out, you know, who did this, they're going to get theirs.'...
...
Q. What exactly did he say at that meeting?
A. They'll get theirs.
Q. Had you told him that you had talked to the Department of Labor with a claim of some sort prior to that meeting?
A. No.
Q. So that wasn't a personal threat to you?
A. No.

(Plaintiff's Depo. at 83, 85).

13

statement itself serves as uncontroverted, direct evidence that Donati did not know who filed the complaint with the Department of Labor at least as of the time the statement was made. The statement does not establish circumstantial evidence of Donati's knowledge of Plaintiff's protected activity to meet the requisite causal connection in support of Plaintiff's FLSA retaliation claim.

There being no genuine issues of material fact, Plaintiff cannot show that a causal connection existed between her protected activity and her termination. Plaintiff has failed to establish a *prima facie* claim for retaliation under the FLSA as a matter of law. Accordingly, Defendants' Motion for Partial Summary Judgment on Count I of Plaintiff's Amended Complaint is GRANTED.

## II. Whistleblower's Act Retaliation

FLA. STAT. § 448.102 provides:

An employer may not take any retaliatory personnel action against an employee because the employee has:

(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.

(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

To establish a *prima facie* claim under the Whistleblower's Act, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's protected activity and the adverse employment action. *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950-51 (11th Cir.

2000); *Rice-Lamar v. City of Ft. Lauderdale*, 853 So. 2d 1125, 1132 (Fla. Dist. Ct. App. 2003) (both cases applying Title VII retaliation analysis to Whistleblower's Act claims). Again, for purposes of this motion, Defendants do not dispute that Plaintiff has met the first two elements of her Whistleblower's Act claim. (Dkt. 20, p. 9).

Defendants argue that Plaintiff cannot make a *prima facie* claim for retaliation under the Whistleblower's Act because she cannot establish a causal connection between her protected activity and her termination. (Dkt. 20, p. 1). Defendants contend that Plaintiff cannot show that Donati was aware of her protected activity when he terminated her. (Dkt. 20, p. 9).

**A.    Protected Activity**

Plaintiff alleges Defendants violated all three sections of the Whistleblower's Act. (Dkt. 24, pp. 10-12). Although the same causation analysis applies, the scope of Plaintiff's protected activity is broader under the Florida Whistleblower's Act than the FLSA. Based on the plain language of § 448.102(1), Plaintiff is protected from retaliation based on disclosure, or threats of disclosure, of any activity, policy, or practice of the employer that is in violation of a law, rule, or regulation to any appropriate governmental agency. Plaintiff is protected under § 448.102(2) from retaliation based on providing information to, or testifying before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer. Plaintiff is protected from retaliation under § 448.102(3) based on objections to, or refusal to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

In addition to her initial complaint made the Department of Labor alleging FLSA violations, Plaintiff argues that she engaged in other protected activity for which she was retaliated against, including 1) her complaint to Donati regarding "overtime issues"; 2) her complaint to Donati's wife

regarding Defendants' failure to pay her for partial days she worked; 3) her telephone call to the Department of Labor investigator during the investigation; and 4) her interview with the Department of Labor investigator.[20] (Dkt. 24, pp. 2-7).

Plaintiff's initial telephone call and letter to the Department of Labor complaining of alleged FLSA violations constitutes protected activity under sections (1) and (2) of the Whistleblower's Act. In addition, Plaintiff's informal complaint to Donati's wife regarding Defendants' failure to pay her for partial days she worked also constitutes protected activity under section (3) of the Whistleblower's Act. Plaintiff's telephone call to the Department of Labor investigator during the investigation and her interview with the Department of Labor investigator are likewise protected activity under section (2) of the Whistleblower's Act. As stated with regard to Plaintiff's FLSA claim, Plaintiff's complaint to Donati made in the past regarding "overtime issues" related to other employees is too vague and remote in time to constitute protected activity for purposes of her retaliation claims.

### B.    Donati's Knowledge of the Protected Activity

As previously discussed, Plaintiff has not shown, either through direct or circumstantial evidence, that Donati was aware of her complaint to the Department of Labor (either by telephone or letter) or her informal complaint to his wife prior to her termination. Plaintiff has, however, shown that Donati was aware of Plaintiff's telephone call to the Department of Labor investigator during the investigation. Donati admits that he was aware that Plaintiff called the Department of Labor during the investigation after he had told her she could not do engraving work. (Donati's Depo. at 44). Donati also admits that on November 18, 2003, he learned from the investigator that

---

[20] Again, Defendants do not dispute that Plaintiff's complaint to the Department of Labor was protected activity under the FLSA for purposes of this motion. (Dkt. 20, p. 9).

16

Plaintiff had reported that she had worked through her lunches and was, therefore, entitled to back wages. (Donati's Depo. at 42). Donati likewise was aware that Plaintiff met with the investigator for an interview and that she "provided information to ... [a] governmental agency [or] person ... conducting an investigation ... into an alleged violation of a law, rule, or regulation by the employer." *See* FLA. STAT. § 448.102(2). Donati's knowledge, along with the close temporal proximity between the time he learned about the protected activity and Plaintiff's termination, establishes the requisite causal connection to support Plaintiff's Whistleblower's Act claim.[21] *See Farley*, 197 F.3d at 1337.

Plaintiff has presented a *prima facie* case of retaliation under the Whistleblower's Act. Therefore, Defendants' Motion for Partial Summary Judgment on Count II of Plaintiff's Amended Complaint is DENIED.

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants' Motion for Partial Summary Judgment (Dkt. 20) is **GRANTED** as to Plaintiff's FLSA retaliation claim (Count I) and **DENIED** as to Plaintiff's Whistleblower's Act retaliation claim (Count II).

**DONE AND ORDERED** in chambers this 6th day of December, 2005.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

---

[21] Since Plaintiff's protected activity falls within § 448.102(2), she was not required to provide Defendants with written notice of her claim. *See* FLA. STAT. § 448.102; *Golf Channel v. Jenkins*, 752 So. 2d 561, 564-65 (Fla. Dist. Ct. App. 2000).